IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE EXTRACTION OIL & GAS, INC., *et al.*, | : : : : | Chapter 11<br>Bankr. No. 20-11548 (CSS)<br>(Jointly Administered) |
| Debtors. | | |

| | | |
|---|---|---|
| PLATTE RIVER MIDSTREAM, LLC,<br>DJ SOUTH GATHERING, LLC, and<br>PLATTE RIVER HOLDINGS, LLC, | : : : : : | Adv. No. 20-50833 (CSS) |
| Appellants,<br>v. | : : : | Civ. No. 20-1532 (CFC) |
| EXTRACTION OIL & GAS, INC., | : : : | |
| Appellee. | : | |

Curtis S. Miller, Taylor M. Haga, Brett S. Turlington, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Matthew J. Ochs, Christopher A. Chrisman, Michelle R. Seares, HOLLAND & HART LLP, Denver, Colorado,

    *Counsel for Appellants*

Christopher Marcus, P.C., Allyson Smith Weinhouse, Ciara Foster, KIRKLAND & ELLIS LLP, New York, New York; Anna Rotman, P.C., Jamie Alan Aycock, Kenneth Young, KIRKLAND & ELLIS LLP, Houston, Texas; George W. Hick, Andrew C. Lawrence, Harker Rhodes, KIRKLAND & ELLIS LLP, Washington, D.C.,

    *Counsel for Debtor-Appellee*

**MEMORANDUM**

December 7, 2020
Wilmington, Delaware

_/s/ C. J. C._
CONNOLLY, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Pending before the Court is an Emergency Motion for Stay Pending Appeal (D.I. 4) ("Emergency Motion") of the Bankruptcy Court's Order, dated November 10, 2020 (Bankr. D.I. 1038)[1] ("Rejection Order") which approved the rejection by Extraction Oil & Gas, Inc. ("Debtor" or "Extraction") of certain executory contracts and unexpired leases, including certain Transportation Service Agreements ("TSAs") between the Appellants and the Debtor, pursuant to section 365 of the Bankruptcy Code. The Rejection Order is supported by the Bankruptcy Court's Findings of Fact and Conclusions of Law, dated October 14, 2020 (Adv. D.I. 54) ("FOFCOL") which granted the Debtor's motion for summary judgment that it was entitled to a declaratory judgment that the TSAs did not create covenants that run with the land. The Rejection Order is also supported by the Bankruptcy Court's bench ruling, dated November 2, 2020 (Bankr. D.I. 942-1) ("Bench Ruling") in which Bankruptcy Court set forth its reasons for approving

---

[1] The docket of the Chapter 11 cases, captioned *In re Extraction Oil & Gas*, Inc., et al., No. 20-11548 (CSS) (Bankr. D. Del.), is cited herein as Bankr. D.I. __," and the docket of the adversary proceeding, captioned *Platte River Midstream, LLC v. Extraction Oil & Gas, Inc.*, Adv. No. 20-50833 (CSS) (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

the Debtor's rejection of the TSAs. For the reasons set forth herein, I will deny the Emergency Motion.

## II.   BACKGROUND

Extraction is an oil and gas company that operates in urban communities near Denver, Colorado. Appellants own and operate crude oil pipelines that transport approximately 95% of Extraction's oil production under the TSAs. Extraction is Appellants' largest customer, and Appellants' pipelines were custom built to service Extraction's needs. The pipelines cost hundreds of millions of dollars to build, and Appellants were supposed to recoup this investment over the 10-year terms of the TSAs in the form of tariffs paid by Extraction for Appellants' transportation services. Under the TSAs, Extraction committed to Appellants all of its crude oil in and under the ground in defined geographic areas for the TSAs' term. Appellants assert that these dedications are essential to recouping their investment and that the pipelines would not have been built absent the dedications.

Extraction filed for bankruptcy in June 2020. In August 2020, it moved to reject the TSAs. Following trial, the Bankruptcy Court issued a Bench Ruling and the Rejection Order permitting Extraction to reject the TSAs. On November 2, 2020, Appellants moved for a stay pending appeal of the Rejection Order, which was denied by the Bankruptcy Court. (D.I. 4, Exh. D at 43:20-44:25). On November 13, 2020, Appellants filed a timely notice of appeal. (D.I. 1). On

November 19, 2020, Appellants filed the Emergency Motion. The Emergency Motion is fully briefed. (D.I. 4, 11, 15). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

### III.   JURISDICTION AND STANDARD OF REVIEW

The Rejection Order is a final order, and this Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158.

### IV.   ANALYSIS

When presented with a motion to stay, courts consider "(1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest." *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015) (emphasis added). The first two factors are "the most critical," and a strong likelihood of success is "the more important piece of the stay analysis . . . ." *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019) (citations omitted).

3

### A. Likelihood of Success on the Merits

Appellants argue that the Bankruptcy Court made several errors in approving rejection of the contracts. According to Appellants, the Bankruptcy Court incorrectly held that, as a matter of Colorado law, the TSAs do not create covenants running with the land. Appellants further argue that the Bankruptcy Court incorrectly held that the TSAs may be rejected even if they do contain covenants. Finally, Appellants contend that the Bankruptcy Court applied the incorrect standard in approving rejection of the TSAs.

#### 1. Existence of a Covenant Running with the Land

Under Colorado law, two requirements are necessary to create covenants running with the land: (1) the parties must intend to create the covenant; and (2) the covenant must touch and concern the land. *See Reishus v. Bullmasters, LLC*, 409 P.3d 435, 440 (Colo. App. 2016) (citing *Cloud v. Ass'n of Owners*, 857 P.2d 435, 440 (Colo. App. 1992)).

##### a. Intent to Create the Covenant

With respect to the first requirement, the Bankruptcy Court determined that one of the TSAs – referred to by the parties as the "PRM TSA" or "Platte River TSA" -- did not create a covenant running with the land because it did not contain language expressly stating the parties' intent to create a covenant. (*See* FOFCOL at 22). According to Appellants, this was error, as such language is not necessary

4

under Colorado law. (*See* D.I. 4 at 8-9). Appellants argue that no specific or magical terms are required under Colorado law, and whether the parties intended to create the covenant is determined from the provisions of the contract "as a whole ..., giving effect to all provisions contained therein." *See Lookout Mtn. Paradise Hills Homeowners' Ass'n v. Viewpoint Assocs.*, 867 P.2d 70, 75 (Colo. App. 1993) (citation omitted).

Appellants do not dispute that the TSA lacks express language of intent; they merely contend that such language is not necessary. As the Bankruptcy Court correctly noted, "[I]n the [Colorado] cases that have recognized a covenant running with the land, the covenants were in express terms." *TBI Explr. v. Belco Energy Corp.*, 220 F.3d 586 (5th Cir. 2000). Notwithstanding the requirement, the Bankruptcy Court concluded that the Platte River TSA lacked any language manifesting a clear intent to create a real covenant. A review of the agreement supports this conclusion and Appellants cite no additional language that would support a finding that the Bankruptcy Court erred on this point. Moreover, as Debtor correctly points out, Colorado law disfavors the creation of covenants running with the land as a derogation of the common law's preference for the free alienability of land. *Nelson v. Farr*, 354 P.2d 163, 166 (Colo. 1960) ("[A]s a fundamental principle of law of real property, restrictions on the alienation and use of land are not favored, and all doubt should be resolved in favor of the free use of

5

property.'"). Thus, any ambiguity concerning an intent to create a real covenant must be resolved "against the restriction and in favor of free and unrestricted use of property." *MidCities Metro. Dist. No. 1 v. U.S. Bank Nat'l. Ass'n*, 12-CV-03322-LTB, 2013 WL 3200088, at *3 (D. Colo. June 24, 2013). Appellants have not demonstrated a likelihood of success on the merits of this requirement.

### b. Touch and Concern the Land

With respect to the second requirement, under Colorado law, a covenant touches and concerns the land when it relates to the parties' use and enjoyment of real property, *i.e.*, when the parties' promises create benefits—and burdens—on the use of real property. *See Reishus*, 409 P.3d at 440 (citation omitted). The Bankruptcy Court determined that neither of the TSAs touched and concerned real property. According to Appellants, the Bankruptcy Court incorrectly applied an overly "restrictive" test under Texas law followed in *In re Sabine Oil & Gas Corp.*, 550 B.R. 59 (Bankr. S.D.N.Y. 2016). Appellants contend that Colorado applies a less restrictive standard than that employed by the Bankruptcy Court but do not cite a single Colorado case in support. The Court agrees with the Debtor that this falls short of a "strong showing" of likely success on the merits. *See Tracey v. Recovco Mortg. Mgmt. LLC,* 451 F. Supp. 3d 337, 342 (D.N.J. 2020) ("Allegations contained . . . without citation to the law [are] insufficient" to show likelihood of success on the merits); *Cent. Jersey Freightliner, Inc. v. Freightliner Corp.*, 987 F.

6

Supp. 289, 295 (D.N.J. 1997) (holding that plaintiffs cannot establish a likelihood of success on the merits when they "have cited no authority to support their contention").

Appellants further contend that the Bankruptcy Court erred because the TSAs do in fact touch and concern the land. Here, the TSAs "dedicated" and "committed" certain of Extraction's interests to the performance of the TSAs. Specifically, Extraction committed to provide certain volumes of produced crude petroleum for exclusive shipping services. (*See* FOFCOL at 27). Extraction also committed certain interests "in Crude Petroleum of all formations in, under or attributable to the Dedication Area" to the provision of these services. (*Id.* at 7). Appellants claim these dedications and commitments touch and concern the land "because they both benefit and burden Extraction's real property interests" and argue that the Bankruptcy Court of ignored that fact. The Court must disagree. The Bankruptcy Court considered all of this and correctly held that "Colorado generally follows the traditional common law approach to the touch and concern element." (FOFCOL at 26 (citing 3 Tiffany Real Property § 854 (3d ed. 2015)). Under this approach, courts focus on the land itself—i.e., the estate in real property with which the covenant allegedly runs—and the covenant's objective effect on that land. Covenants only touch and concern the land if they "'closely relate to the land, its use, or enjoyment.'" *Reishus*, 409 P.3d at 440 (quoting *Cloud*, 857 P.2d at

7

440). In other words, real covenants must "operate[] to benefit the physical use of the land." *Bigelow v. Nottingham*, 833 P.2d 764, 767 (Colo. App. 1991), *rev'd in part sub nom. on other grounds Haberl v. Bigelow*, 855 P.2d 1368 (Colo. 1993) (emphasis added). If not, a covenant is a personal covenant, not a real covenant. (FOFCOL at 26).

The Bankruptcy Court found that the "dedicated and committed interests are used to identify the particular minerals that are subject to, set apart for, pledged or committed to the parties' contractual obligations." (FOFCOL at 3). That is, the dedications and commitments do not closely relate to the use or enjoyment of Extraction's mineral estates; they only identify the personal property (i.e., the produced crude) that is subject to the parties' contractual obligations. (FOFCOL at 27-28). Because these commitments do not directly affect the use or enjoyment of the purportedly burdened real property, "they cannot serve to satisfy the touch and concern the land element." (FOFCOL at 3). Appellants offer little support in opposition to the Bankruptcy Court's careful analysis.

    **c.**    **Privity**

Appellant also argue they are likely to prevail on their claim that privity of estate existed when the TSAs were executed. Under Colorado law, however, "[p]rivity of estate requires that the covenants that allegedly run with the land be accompanied by a contemporaneous conveyance of some interest in the land with

which the covenant runs." (FOFCOL at 38 (citing *Taylor*, 274 P.2d at 988)). Here, the relevant land is Extraction's mineral estates. As the Bankruptcy Court explained in detail, none of the purported property interests identified by Appellants—an equity interest in a pipeline, the sale of a subsidiary, and surface access rights or rights-of-way—are interests in the mineral estate. (FOFCOL at 39-44).

Appellants are unlikely to prevail on any of the three requirements for creating a real covenant. As the Debtor correctly points out, under Colorado law, all elements must be satisfied, or no covenant exists. *See Cloud*, 857 P.2d at 440. Accordingly, Appellants are unlikely to prevail on this claim. As Appellants are unlikely to succeed on appeal of their claim that the TSAs created convenants running with the land, they are unlikely to prevail on their claim that the TSAs could not be rejected based on the alleged covenants contained therein.

### 2. Rejection Under the Business Judgment Rule

Finally, Appellants argue that the Bankruptcy Court applied an overly lenient standard for rejecting executory contracts and misconstrued the relevant facts under that standard. Appellants argue that certain types of contracts require a bankruptcy court apply a standard higher than "business judgment" in evaluating a debtor's decision to reject, and because the TSAs are governed by FERC, the Bankruptcy Court should have applied a more rigorous standard and considered the

9

public interest and the balance of the equities at the time Extraction filed its motion. *See, e.g., In re FirstEnergy Sols. Corp.*, 945 F.3d 431, 454-55 (6th Cir. 2019) ("[W]hen a Chapter 11 debtor moves a bankruptcy court for permission to reject a filed energy contract that is otherwise governed by FERC ... the bankruptcy court must consider the public interest and ensure that the equities balance in favor of rejecting the contract ...."); *In re Mirant Corp.*, 378 F.3d 511, 524 (5th Cir. 2004) ("Supreme Court precedent supports applying a more rigorous standard" than the business judgment standard when evaluating a request to reject an agreement regulated by FERC); *In re Calpine Corp.*, 337 B.R. 27, 38-39 (S.D.N.Y. 2006) ("Both the Mirant decision and the FERC Order predicate bankruptcy court jurisdiction to reject energy contracts on the belief that the public interest is adequately considered at a rejection hearing, at least in part through FERC's participation.") (citation omitted).

Notably, Appellants did not acknowledge that the Bankruptcy Court did consider the higher standard, but nonetheless found that Extraction still prevailed. (*See* Bench Ruling at 21-31). Moreover, Appellants' Emergency Motion offered no argument as to any error in the Bankruptcy Court's alternative analysis. *See Garza v. Citigroup Inc.*, 881 F.3d 277, 284–85 (3d Cir. 2018). Appellants' failure to address the Bankruptcy Court's alternative analysis, standing alone, means that

10

they have not demonstrated a strong likelihood of success on the merits. *In re Innovative Commc'ns*, 390 B.R. 184, 188 (Bankr. D.V.I. 2008).

### B. Irreparable Harm to Appellants in Absence of a Stay

Harm is irreparable if it "cannot be prevented or fully rectified by a successful appeal." *Revel AC*, 802 F.3d at 568 (citation and internal quotations omitted). The prospect of financial ruin constitutes irreparable harm. *See Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011) ("[A]n exception [to the economic injury rule] exists where the potential economic loss is so great as to threaten the existence of the movant's business.")

Appellants argue that Extraction accounts for over 75 percent of Appellants' revenues. Without these revenues, Appellants contend that they will be forced to file bankruptcy, cease operating, or both, and that this is irreparable harm for which there is no effective redress. Conversely, Debtors argue that Appellants fail to acknowledge the speculative nature of their claims. *Eaton Corp. v. Geisenberger*, -- F. Supp. 3d ----, 2020 WL 5531587, at *19 (D. Del. Sept. 15, 2020) ("The irreparable harm alleged must be actual and imminent, not merely speculative") (citation omitted).

The Court agrees. To satisfy the irreparable harm factor, a stay movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent. As the Bankruptcy Court noted, Appellants "did not analyze whether

11

the pipelines could be sold or whether they could renegotiate new rates and contracts—in other words, [the] testimony was hypothetical and contingent rather than presenting quantifiable evidence." (Bench Ruling at 28).

Even if Appellants' assertions are accepted, however, the specter of Appellants' own restructuring cannot justify a stay because this would upend a fundamental policy of bankruptcy law. As the Bankruptcy Court correctly points out, situations in which parties find themselves negatively impacted by restructuring "arise in bankruptcy contexts all the time." (Bench Ruling at 29). This is because "a central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (citation omitted). Thus, "Congress [has] made a determination that an eligible debtor should have the opportunity to avail itself of a number of Code provisions which adversely alter creditors' contractual and nonbankruptcy law rights." *In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 344-45 (Bankr. D. Del. 1998). One of those tools is rejection, which is "vital to the basic purpose to a Chapter 11 reorganization, because [it] can release the debtor's estate from burdensome obligations." *Bildisco*, 465 U.S. at 528). By allowing Debtors to choose to reject executory contracts notwithstanding

12

the other party's contractual expectations, Congress considered the proper allocation of risk as between the debtor and contractual parties and struck the balance in favor of the debtor. *See* 11 U.S.C. § 365(a). Accepting Appellants' argument would allow them to use the guise of "irreparable harm" to "upset the delicate balance of interests fashioned by Congress under" the Code. *PPI Enters.*, 28 B.R. at 345 (citation omitted). Moreover, Appellants' argument for irreparable harm would apply in every instance where a contract was rejected. *See Ultra Petrol.*, 2020 WL 4940240, at *9.

### C. Injury to other Parties in Interest

As to harm to the Debtor, Appellant argues that Extraction will suffer little to no harm if a stay is granted. Appellants transport approximately 95% of Extraction's crude oil production to market, and if the Order is not stayed, Extraction will be in breach of Appellants' contracts; Appellants could cease transporting Extraction's crude oil, which will result in Extraction losing over $85 million in the next six months while the appeal is pending. Thus, Appellants argue, a stay maintaining the status quo will only prevent Extraction from foregoing significant revenue.

The Debtor disagrees. Extraction is currently restructuring, and forcing it to maintain unsustainable contractual obligations with Appellants will strain that process and prevent Extraction from effectively implementing its considered

business plan, which involves selecting alternative service providers at lower rates and moving some of its crude oil to a more favorable location where it can command higher prices. (*See* Bench Ruling at 5-7). Forcing Extraction to maintain unsustainable contractual obligations will strain that process and prevent Extraction from effectively implementing its considered business plan. This will also harm creditors. Extraction argues that there is a strong public policy in having bankruptcy 'proceedings continue to an orderly, efficient resolution to maximize and preserve the estate's assets for the sake of the creditors." *In re Montgomery Ward, L.L.C.*, 388 B.R. 61, 628 (Bankr. E.D. Pa. 2008) (denying stay); *In re Bankruptcy Appeal of Allegheny Health, Educ. and Research Found.*, 252 B.R. 309, 331 (Bankr. W.D. Pa. 1999). This policy would be thwarted by a stay restricting the Debtor from fully implementing its business plan for months, if not years, pending resolution of this appeal, especially because the confirmation hearing for Extraction's restructuring is scheduled for December 21, 2020. In the meantime, Extraction and its creditors will be unable to order their business affairs because one set of aggrieved parties has held up the litigation. The Court agrees that the potential harm to Debtor's reorganization efforts weighs against granting the stay.

D.   **Public Interest**

Appellants argue that staying the Rejection Order advances the public's interest "in seeing that parties oblige by their contractual obligations and are not allowed to skirt such obligations at another's expense." (D.I. 4 at 17 (citing *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 626 (S.D.N.Y. 2010) (citation omitted)). Appellants further argue that the public interest is served by maintaining the status quo and avoiding the need for transport by trucking. According to Appellants, Extraction's only readily available transportation alternative is trucking, and unrebutted testimony below showed this would place over 1,000 oil tanker trucks on the roads of urban communities. Appellants argue that trucking is the most dangerous form of transporting crude oil, and its risks are amplified here, because these trucks would be transiting Colorado roads in winter, when conditions are at their worst. Granting a stay, Appellants contend, will prevent this harm to the public interest.

As the Bankruptcy Court observed, Appellants' expressed concerns over the impact of trucking will be short-lived, and "the public will benefit from the Debtors' continued production, their workers remaining employed, and potentially additional jobs and contracts from the Debtors having to re-route its oil." (Bench Ruling at 30). I find that this factor weighs against granting a stay.

## V. CONCLUSION

On balance, I find that Appellants have not carried the burden of establishing that a stay pending appeal is warranted here. A separate Order follows.